# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Theo's Pizza, LLC, | ) Civil Action No. 3:17-cv-00039-JMC |
| Plaintiff, | ) |
| v. | ) |
| | ) **ORDER AND OPINION** |
| Integrity Brands, LLC, | ) |
| Defendant. | ) |

Plaintiff Theo's Pizza, LLC filed this action against Defendant Integrity Brands, LLC seeking a declaratory judgment as to the parties' relationship and monetary damages for alleged violations of the Business Opportunity Sales Act ("BOSA"), S.C. Code Ann. §§ 39-57-10 to -80 (1991), and the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. §§ 39-5-10 to -560 (2014), or, in the alternative, for breach of contract. (ECF No. 1-1 at 4 ¶ 4–9 ¶ 24.)

This matter is before the court on IBL's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 33.) Theo's opposes IBL's Motion in its entirety. (ECF No. 40.) For the reasons set forth below, the court **GRANTS IN PART AND DENIES IN PART** IBL's Motion for Summary Judgment.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Founded in 2009 and headquartered in Atlanta, Georgia, IBL owns and operates made-to-order pizza restaurants and sells and develops pizza restaurant franchises under the trademark of "Uncle Maddio's Pizza Joint" ("UMPJ"). *E.g.*, *Integrity Brands, LLC*, https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapid=291783793 (last visited Mar. 19, 2019); *Integrity Brands, LLC*, http://www.buzzfile.com/business/Uncle-Maddio!s-Pizza-Joint-404-929-6654 (last visited Mar. 19, 2019).

In the fall of 2010, Ted and Marcia Contos were looking to open a franchise restaurant. (ECF No. 40-1 at 2.) In early 2012, the Contoses settled on becoming a UMPJ franchisee. (*Id.*) To further their plans, the Contoses obtained financing in the amount of $400,000.00. (*Id.* at 3.)

On February 10, 2012, the Contoses made a site visit to the UMPJ franchise located at Akers Mill in Atlanta. (ECF Nos. 40-2 at 1, 40-3.) The Contoses met with Roger Wagerman, IBL's vice president of franchise development, Tony Brewer, the chief operating officer, and Alex Cook, the corporate chef and director of franchise training. (*Id.*) During the site visit, the Contoses were provided documentation showing "that the estimated costs to open an . . . UMPJ similar to Aker's Mill . . . were approximately $350,000" and were told "that weekly sales for Aker's Mill were $20,000." (ECF No. 40-2 at 1; *see also* ECF No. 40-3 at 4.) As a result of the information received during the site visit, the Contoses moved forward with their plans to open an UMPJ franchise. (*E.g.*, ECF No. 40-11 ("We look forward to continued and a long term relationship with you, we are very impressed with everything so far, . . . .").) On April 3, 2012, the Contoses organized two limited liability companies: "Thea & Theo, LLC to be the market developer and Theo's . . . to operate the first franchise store." (ECF No. 40 at 4); *Theo's Pizza, LLC*, https://businessfilings .sc.gov/BusinessFiling/Entity/Profile/abf79ddd-0102-480e-a990-8ac8115affc7 (last visited Mar. 18, 2019); *Thea & Theo, LLC*, https://businessfilings.sc.gov/BusinessFiling/Entity/Profile/1f55f 4aa-c687-4d97-9202-eb760b06d506 (last visited Mar. 18, 2019).

On April 6, 2012, IBL and Thea & Theo, LLC executed a Market Development Agreement (ECF No. 33-1 at 1–21), which was meant to govern the Contoses' relationship with IBL until the opening of a UMPJ restaurant in the Greater Columbia area. (ECF No. 40-13 at 1:10–15.) Pursuant to the Market Development Agreement, Thea and Theo, LLC agreed that it would sign

2

IBL's Franchise Agreement within ten (10) days after IBL approved the proposed site for the first restaurant and that first restaurant would open by April 6, 2013. (ECF No. 33-1 at 5 ¶ 10, 18.) Without having executed the Franchise Agreement, the Contoses signed an Addendum to the Franchise Agreement on behalf of Thea and Theo, LLC on April 6, 2012, "to set forth certain revisions to the Franchise Agreement [] agreed upon by the parties." (ECF No. 33-1 at 22.) After they signed the Market Development Agreement on behalf of Thea and Theo, LLC, the Contoses "returned to Atlanta and were told by Roger Wagerman and the franchisee, Shehzad Lutfeali, that Aker's Mill was still having weekly sales of $20,000." (ECF No. 40-2 at 1.)

After the Contoses received official corporate approval to open a franchise on or around February 28, 2012 (*see* ECF No. 40-12), the parties began the process to select a site for the UMPJ franchise in Columbia. The Market Development Agreement provided the following relevant guidelines for the site selection process:

> Developer is responsible for locating proposed sites for the MADDIO'S Restaurants to be established hereunder. Franchisor, in its sole discretion, may counsel and offer advice to Developer with respect to such site selection; provided, however, in no event shall Franchisor be liable to Developer in connection with providing advice or any such assistance. Upon Developer's selection of a proposed site for a Restaurant, Developer shall promptly submit to Franchisor such site, demographic and other data and information about the proposed site as reasonably requested by Franchisor, utilizing such firms as may be required by Franchisor, and a copy of any lease, sublease or purchase agreement to be entered into in connection with the acquisition of such site. Franchisor shall either accept or reject the proposed site utilizing its then-current site selection policies and procedures. . . . Developer acknowledges and agrees that Franchisor may reject any proposed site for any reason in its sole discretion, in which event, Developer may not develop a Restaurant at the rejected site, but must locate another proposed site for the Restaurant . . . .

(ECF No. 33-1 at 3 § 7.1.)

Thereafter, in the months of May through July of 2012, the parties exchanged communications wherein the Contoses advocated for placing their UMPJ restaurant at sites in the Irmo, Harbison, and Lake Murray Boulevard areas of Columbia and IBL favored the Jasmine site,

a space in a building located at 601 Main Street, Columbia, South Carolina 29201.[1] (ECF Nos. 40-17 to 40-24.) The Contoses were concerned that the start-up for the Jasmine site would be "150k higher than any previous estimations," but IBL maintained that the total start-up capital needed would be less than $400,000.00. (*See* ECF Nos. 40-20, 40-23.) Additionally, the Contoses were told that a restaurant at the Jasmine site could do $1,000,000.00 in business. (*See* ECF Nos. 40-21, 40-22.)

On September 5, 2012, Theo's signed a lease for the Jasmine site space. (ECF No. 40 at 7.) On April 6, 2013, Theo's had its grand opening. (*Id.* at 8.) The final cost to open the Jasmine site restaurant was $605,477.81. (ECF No. 40-4.) During the years that followed, Theo's generated the following amounts of revenue:

| Year | Net Income | Gross Profit | Net Profit |
|---|---|---|---|
| 2013 | $522,450.72 | $322,982.78 | -$92,364.67 |
| 2014 | $653,245.77 | $422,748.23 | -$85,046.44 |
| 2015 | $597,933.26 | $405,310.25 | -$59,100.88 |
| 2016 | $531,300.59 | $359,808.95 | -$58,063.64 |

(ECF No. 40-28.)

As a result of the foregoing operational figures, the Contoses sent IBL a demand letter on November 11, 2016, containing two (2) options in an attempt to avoid protracted litigation: "Option 1: IB[L] makes Theo's Pizza LLC and the Contos' whole with a onetime payment of $660,000. Option 2: IB[L] takes over the operation of the USC location to include all outstanding

---

[1] The court assumes the parties called this location the "Jasmine site" or "Jasmine Deli" because its prior tenant was the Jasmine Deli & Café. *See, e.g.*, *Jasmine Deli & Café*, https://www.yelp.com/biz/jasmine-deli-and-cafe-columbia (last visited Mar. 18, 2019).

4

debt that is owed, a lease transfer to IB[L] and a onetime payment of $300,000." (ECF No. 40-2.) Thereafter, on November 30, 2016, Theo's filed a Complaint against IBL in the Richland County (South Carolina) Court of Common Pleas seeking the aforementioned declaratory judgment and alleging violations of the BOSA and the SCUTPA or, in the alternative, breach of contract. (ECF No. 1-1.) After the court denied its Motion to Dismiss (ECF No. 12), IBL answered the Complaint and filed counterclaims against Theo's for alleged violations of the Lanham Act ("Lanham Act"), 15 U.S.C. §§ 1051–1127, common law trademark infringement, and statutory violation of the SCUTPA. (ECF No. 14 at 2 ¶ 10–7 ¶ 50.) Theo's answered IBL's counterclaims on June 12, 2017. (ECF No. 16.) On June 29, 2018, Theo's ceased operations. (ECF No. 40 at 10.)

After the parties engaged in discovery, IBL moved for summary judgment on August 24, 2018. (ECF No. 33.) Theo's filed a Return to Defendant's Motion for Summary Judgment on September 28, 2018. (ECF No. 40.)

## II. JURISDICTION

This court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.00. Theo's is a South Carolina limited liability company with its principal place of business in Richland County, South Carolina. (ECF No. 1-1 at 4 ¶ 1.) IBL is a Georgia limited liability company with its principal place of business in Atlanta, Georgia. (*Id.* ¶ 2.) The court is satisfied that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. (*See* ECF Nos. 1 at 1–2 ¶ 4, 1-1 at 5 ¶ 8–7 ¶ 16.)

## III. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

5

56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.

### IV. ANALYSIS

1. <u>The Parties' Arguments</u>

IBL moves for summary judgment on Theo's claims for breach of contract and violation of the BOSA. First, as to the latter claim, IBL argues that there is no evidence that the parties' transaction involved vending machines, performance guarantees, or anything more than the licensing of the "Uncle Maddio's Pizza" registered trademark. (ECF No. 33 at 4–5.) As a result, IBL argues that the BOSA is inapplicable because none of the statutory law's prerequisites are satisfied by the relevant facts of this matter. (*Id.* (referencing S.C. Code Ann. § 39-57-20 (1993)[2]).)

---

[2] Section 39-57-20 of the BOSA defines the applicability of the statute and provides:

In this regard, IBL asserts that "the solicitation, sale and operation of the Uncle Maddio's Restaurant does not constitute a 'Business Opportunity'" as defined by the BOSA. (*Id.*) IBL next argues that in light of Theo's inconsistent positions regarding whether there was a contract between the parties, IBL is entitled to summary judgment on the breach of contract claim because either there was no contract or (2) the Franchise Agreement and Addendum controls the parties' relationship and IBL's actions were in compliance with those documents. (*Id.* at 6–8.)

Theo's opposes IBL's Motion arguing that the BOSA is applicable to the facts of this case based on "representations made by IB[L] and its agents to induce the Contos[es] to develop a UMPJ store." (ECF No. 40 at 14; *see also id.* at 11–15.) Theo's asserts that to the extent its claims are not encompassed by the BOSA, IBL's deceptive and unfair acts satisfy the elements of a SCUTPA claim. (ECF No. 40 at 15–16.) As to its breach of contract claim, Theo's argues that

---

> As used in this chapter 'business opportunity' means the sale or lease of any products, equipment, supplies, or services which are sold to the purchaser for the purpose of enabling the purchaser to start a business, for which the purchaser is required to pay the seller a fee which exceeds two hundred fifty dollars, and in which the seller represents: (1) that he will provide locations or assist the purchaser in finding locations for the use or operation of vending machines, racks, display cases or other similar devices, or currency-operated amusement machines or devices, on premises neither owned nor leased by the purchaser or seller; or (2) that he will purchase any or all products made, produced, fabricated, grown, bred, or modified by the purchaser using in whole or in part, the supplies, services, or chattels sold to the purchaser; or (3) that he guarantees that the purchaser will derive income from the business opportunity which exceeds the price paid for the business opportunity; or that he will refund all or part of the price paid for the business opportunity, or repurchase any of the products, equipment, supplies, or chattels supplied by the seller, if the purchaser is unsatisfied with the business opportunity; or (4) the seller will provide a sales program or marketing program which will enable the purchaser to derive income from the business opportunity which exceeds the price paid for the business opportunity; provided, that this subsection does not apply to the sale or a marketing program made in conjunction with the licensing of a registered trademark or service mark.

S.C. Code Ann. § 39-57-20 (1993).

7

there are genuine issues of material fact because it did not impliedly accept the Franchise Agreement (*see id.* at 17) and even if it did, "there is ample evidence that IB[L] breached its agreement with Theo's." (*Id.* at 19.) Because there are thirty-nine (39) express issues of material fact (*see id.* at 19–22), Theo's requests that the court deny IBL's Motion for Summary Judgment. (*Id.* at 22.)

2. The Court's Review

To partially resolve the instant Motion, the court must determine whether an alleged violation of the BOSA is an appropriate claim as asserted by Theo's in this action.[3] The court observes that it was only able to locate three (3) distinguishable South Carolina appellate court decisions addressing the BOSA.[4] *See Robertson v. Bumper Man Franchising Co., Inc.*, 612 S.E.2d 451 (S.C. 2005); *Smith v. Strickland*, 442 S.E.2d 207 (S.C. Ct. App. 1994); *State ex rel. McLeod v. VIP Enters., Inc.*, 335 S.E.2d 243 (S.C. Ct. App. 1985). However, in *Tousley v. N. Am. Van Lines, Inc.*, the Court of Appeals for the Fourth Circuit offered the following summary of the

---

[3] In interpreting the BOSA, the court must "ascertain and effectuate the intent of the legislature." *CPRE, LLC v. Greenville County Assessor*, 716 S.E.2d 877, 881 (S.C. 2011) (defining the primary rule of statutory interpretation (citing *Sloan v. Hardee*, 640 S.E.2d 457, 459 (S.C. 2007)). "In doing so, [][the court] must give the words found in the statute their 'plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation.'" *Id.* (citing *Sloan*, 640 S.E.2d at 459).

[4] Therefore, as a federal court sitting in diversity, this court "must predict how the South Carolina Supreme Court would decide the issue." *Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, C/A No.: 4:16-cv-03666-RBH, 2017 WL 2216298, at *5 (D.S.C. May 19, 2017) (citing *Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002) ("As a federal court sitting in diversity, we have an obligation to apply the jurisprudence of South Carolina's highest court, the South Carolina Supreme Court. But in a situation where the South Carolina Supreme Court has spoken neither directly nor indirectly on the particular issue before us, we are called upon to predict how that court would rule if presented with the issue." (internal footnote and citations omitted))). "In predicting a ruling by the South Carolina Supreme Court, [the court] may also consider, inter alia: restatements of the law, treatises, and well considered dicta," *id.*, "as well as the practices of other states." *Id.* (quoting *St. Paul Fire & Marine Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 365 F.3d 263, 272 (4th Cir. 2004) (internal quotation marks omitted)).

8

BOSA's parameters:

> The Business Opportunity Sales Act requires entrepreneurs who sell 'business opportunities' in South Carolina to comply with registration and other requirements. The promoters must file with the Secretary of State and provide to the purchaser a written disclosure of various aspects of the offer, including the name and business history of the seller, a financial statement of the seller and a description of the services or training to be supplied. S.C. Code Ann. §§ 39-57-30, 39-57-50 (Law. Co-op. Supp. 1983). The promoter also must post a security bond or establish a trust account if he guarantees that the purchaser will derive income that exceeds the price paid for the opportunity. S.C. Code Ann. § 39-57-40 (Law. Co-op. Supp. 1983). The Act further requires that each purchaser be provided with a written contract setting forth the terms of the sale. S.C. Code Ann. § 39-57-70 (Law. Co-op. Supp. 1983). The obvious purpose of the Business Opportunity Sales Act is to alert South Carolina citizens to the possibility that investments in business ventures may be ill-conceived and to provide some protection from unscrupulous promoters. Additionally, S.C. Code Ann. § 39-57-80(e) (Law. Co-op. Supp. 1983) makes a violation of one of the Act's provisions a violation of the state Unfair Trade Practices Act. S.C. Code Ann. § 39-5-20 (Law. Co-op. 1976).

752 F.2d 96, 100 (4th Cir. 1985).

In this matter, IBL moves for summary judgment arguing that the BOSA is inapplicable as a cause of action because none of the four alternative requirements set forth in § 39-57-20 (*see infra* at 6–7 n.2) are present. (ECF No. 33 at 4–5 (quoting and referencing S.C. Code Ann. § 39-57-20 (1993)).) Citing to testimony from IBL's chief executive officer, Matt Andrews, Theo's argues that IBL failed to comply with any of the BOSA's requirements. (ECF No. 40 at 12 (citing ECF No. 40-16 at 6:6–8).) In considering the foregoing arguments, the court is persuaded by the Fourth Circuit's conclusion in *Tousley* that the question of whether IBL's actions violated any of the subsections of § 39-57-20 is an issue of material fact that must be submitted to the jury. *Tousley*, 752 F.2d at 104. Accordingly, the court denies IBL's Motion for Summary Judgment as to Theo's claim alleging violation of the BOSA.[5]

---

[5] The court observes that IBL did not provide any argument for summary judgment as to Theo's claim asserting violation of the SCUTPA. However, because the BOSA claim survives summary judgment, the SCUTPA claim survives as well pursuant to § 39-57-80(e).

9

Next, regarding Theo's cause of action for breach of contract, the court must determine whether there was a binding agreement between IBL and Theo's. (*E.g.*, ECF No. 1-1 at 9 ¶ 21.) "If the evidence [before the court] is conflicting or raises more than one reasonable inference as to the formation of a contract, the issue should be submitted to a jury." *Hendricks v. Clemson Univ.*, 578 S.E.2d 711, 716 (S.C. 2003) (citing *Benya v. Gamble*, 21 S.E.2d 57, 60 (S.C. Ct. App. 1984)). However, "[when the] the material facts concerning the formation of an alleged contract are not in dispute, the issue of contract vel non is a question of law." *W.E. Gilbert & Assocs. v. S.C. Nat. Bank*, 330 S.E.2d 307, 309 (S.C. Ct. App. 1985) (quoting *Valjar, Inc. v. Maritime Terminals, Inc.*, 265 S.E.2d 734, 736 (Va. 1980)).

In their respective submissions, the parties argue both for and against a finding that their relationship was defined by the Franchise Agreement. (*See* ECF Nos. 33 at 6–8, 40 at 17–19.) Upon its review, the court observes that it previously addressed the Franchise Agreement issue and made the following findings:

> In South Carolina, the necessary elements for a contract are offer, acceptance, and valuable consideration. *Roberts v. Gaskins*, 486 S.E.2d 771, 773 (S.C. 1997). Contracts may also be implied by conduct. *See Conner v. City of Forest Acres*, [][611] S.E.2d 905, 912 (S.C. 2005).
>
> Defendant and Plaintiff provide no evidence that Defendant accepted Plaintiff's offered contract or that Plaintiff accepted Defendant's offered contract. Defendant argues that it is "impossible for Plaintiff to operate a restaurant without the permission of Defendant and Developer." While it may be impossible for Plaintiff to operate without permission of Defendant, that does not signify Plaintiff signed a contract . . . . Plaintiff refused in March 2014 to sign the franchise agreement with an arbitration agreement. ECF No. 11-3. Plaintiff's restaurant has continued operating since the date of the March 2014 email and was operating for over a year prior without a written contract. *See id.*
>
> Defendant next argues that the Agreement signed by Thea and Theo's LLC is applicable to the current dispute between Plaintiff and Defendant. ECF No. 9 at 6. . . . Defendant has provided no factual or legal support on how an agreement with a separate legal entity applies to Plaintiff.

(ECF No. 12 at 3–4.)

Even though there is not an express res judicata effect because the court was specifically addressing an issue regarding the enforceability of an arbitration provision in the Franchise Agreement, the parties have not presented any additional argument or evidence for this court to reference as a means to alter its prior decision. To this point, there is no evidence or argument presented that these parties signed a written document purporting to be a contract, much less any version of the Franchise Agreement. There is further no evidence or argument presented regarding the existence of specific agreed upon oral and/or course of dealing provisions demonstrating obligations that were capable of being performed within one (1) year.[6] *Davis v. Greenwood Sch. Dist. 50*, 620 S.E.2d 65, 67 (S.C. 2005) ("[T]he Statute of Frauds requires that a contract that cannot be performed within one year be in writing and signed by the parties." (citing S.C. Code Ann. § 32-3-10 (1991))); *Conner*, 611 S.E.2d at 912 ("A contract may arise from actual agreement of the parties manifested by words, oral or written, or by conduct." (citing *Prescott v. Farmers Tel. Co-op., Inc.*, 516 S.E.2d 923, 926 (S.C. 1999))); *Dowling v. Charleston & W.C. Ry. Co.*, 81 S.E. 313, 314 (S.C. 1913) ("The law implies a contract between persons where the ordinary course of dealing between them, considered in the light of all the circumstances, reasonably warrants the inference that they mutually intended to contract."). Therefore, "[e]ven if [such] an [oral/course of dealing] agreement existed, it would be void under the Statute of Frauds because the alleged agreement was not in writing or signed by the parties." *Davis*, 620 S.E.2d at 67.

Accordingly, because there do not appear to be disputed facts regarding the existence of a binding agreement between the parties, the court finds that Theo's is unable to establish a claim for breach of contract. *E.g.*, *Davis*, 620 S.E.2d at 67 ("In order for a contract to be valid and

---

[6] The court notes that the terms found in the Market Development Agreement and the Franchise Agreement proposed by IBL presumed that the parties' relationship would last between three (3) years and twenty (20) years. (ECF No. 33-1 at 2 § 3, 18; ECF No. 33-3 at §§ 2.1, 2.2.)

enforceable, the parties must have a meeting of the minds as to all essential and material terms of the agreement." (citing *Player v. Chandler*, 382 S.E.2d 891, 894 (S.C. 1989))); *see also Baylor v. Bath*, 1 S.E.2d 139, 140 (S.C. 1938) ("[T]he essential elements of any contract are a contractual intent, followed by an actual meeting of the minds of the parties and accompanied by a valid consideration."). As a result, IBL is entitled to summary judgment on Theo's claim for breach of contract.

## V. CONCLUSION

Upon careful consideration of the record and the parties' arguments, the court **GRANTS IN PART AND DENIES IN PART** Defendant Integrity Brands, LLC's Motion for Summary Judgment.[7] (ECF No. 33.) Specifically, the court grants the Motion for Summary Judgment on Plaintiff Theo's Pizza, LLC's claim for breach of contract, but denies the Motion as to all remaining claims.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

March 20, 2019
Columbia, South Carolina

---

[7] The court observes that IBL did not provide specific argument for summary judgment as to Theo's cause of action seeking a declaratory judgment. However, the court's decision effectively adjudicates sub-paragraphs a through e of the declaratory judgment claim in the Complaint. (*See* ECF No. 1-1 at 8 ¶ 20.)